## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**SHAUN WILKINS and ROY BUCHNER,**

   **Plaintiffs,**

**vs.**                 **CIV. No. 02-980 JH/RLP**

**DETECTIVE JUAN DE REYES, Albuquerque
Police Dept.; AGENT FRANK JACOBY, New
Mexico Dept. of Public Safety; SARGENT
MICHAEL FENNER, New Mexico Dept. of
Public Safety,**

   **Defendants.**

### SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

This matter is before the Court as a result of the December 7, 2007, Order of the United States Court of Appeals for the Tenth Circuit, in which it directed a limited remand of the case to this Court to consider the impact of *Wallace v. Kato*, 127 S. Ct. 1091 (2007) on Plaintiffs' substantive due process and malicious prosecution claims. Thereafter, the Court ordered the parties to submit supplemental briefing on the issues raised by the Tenth Circuit. In accordance with that Order, the Court issues this Supplemental Memorandum Opinion and Order. After reviewing the *Wallace* opinion, the arguments of the parties, and other applicable authorities, the Court concludes that Plaintiffs' malicious prosecution claims are timely, while their substantive due process claims are not.

### BACKGROUND

In a Memorandum Opinion and Order entered August 16, 2006, this Court set forth the facts of this case (which it will not repeat here) and examined Defendants' argument that Plaintiffs' claims were barred by the statute of limitations. In that opinion, the Court analyzed the United

States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), in which the court held that a civil tort action, including an action under 42 U.S.C. § 1983, is not an appropriate vehicle for challenging the validity of outstanding criminal judgments.  Under *Heck*, when a plaintiff alleges tort claims against his arresting officers, the district court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.  *Id.* at 487.  If so, the claim is barred unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254.  *Id.* at 486-87.  This Court also considered the Tenth Circuit's opinion in *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553 (10th Cir. 1999) and similar decisions from several other circuit courts, in which those courts held that the principles of *Heck* apply with equal force to bar Section 1983 claims relating to pending criminal charges when a judgment in favor of the plaintiff would necessarily imply the invalidity of a *future* conviction or sentence.  After considering these precedents, this Court concluded that none of Plaintiffs' claims accrued until January 3, 2001 (for Plaintiff Wilkins) and March 2, 2001 (for Plaintiff Buchner), the dates upon which the prosecutor filed nolle prosequis on the criminal charges against them, reasoning that until those dates, a civil judgment in Plaintiffs' favor on their claims in this case would have conflicted with any possible future criminal judgments against them.  Accordingly, this Court ruled that New Mexico's three-year statute of limitations did not bar Plaintiffs' claims.

Approximately six months after this Court's decision, the Supreme Court issued its opinion in *Wallace v. Kato*.  In *Wallace*, the issue was whether plaintiff's Section 1983 claim for unlawful arrest in violation of the Fourth Amendment satisfied the statute of limitations.  127 S. Ct. at 1094. Although the petitioner argued that his claim accrued when his conviction was set aside, the Seventh

Circuit had concluded that accrual occurred at the time of his arrest. *Id.* First, the Supreme Court observed that "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* at 1095 (internal citations and quotations omitted). Then, analogizing the petitioner's unlawful arrest claims to the common law torts of false arrest and false imprisonment, the court reasoned that petitioner's claims arose from his detention without legal process. Thus, the limitations period began to run when the alleged false imprisonment came to an end—either by the release of the detainee, or by the institution of valid legal process, such as arraignment on charges. *Id.* at 1095-96. However, the court also pointed out that while the limitations period does not begin to run until that time, he could have filed suit immediately upon his false arrest because he was injured and suffered damages at that moment, and therefore he had a complete and present cause of action. *Id.* at 1096 n. 3.

Next, the *Wallace* court addressed petitioner's contention that under *Heck*, his claim could not have accrued until the State dropped the pending criminal charges against him. *Id.* at 1097. That argument met with disdain, as the Supreme Court explained that *Heck* merely "delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn," but rejected as "bizarre" the notion that the *Heck* rule could delay the accrual of a civil claim that might invalidate an anticipated future conviction. *Id.* at 1098 (emphasis in original). In so holding, the *Wallace* court characterized petitioner's argument as an impractical extension of *Heck*, outlining the complications that would arise from applying the *Heck* rule to "an action which would impugn *an anticipated future conviction*." *Id.* (emphasis in original). Thus, the rationale of *Beck* extending the *Heck* rule to future convictions, as well as that in similar decisions from other circuit courts upon which this Court relied, has been effectively overruled.

3

After reading *Wallace*, this Court draws the following lessons.  In reviewing a claim for timeliness under Section 1983, the district court must first determine whether that claim has matured, giving consideration to whether the plaintiff has a complete and present cause of action. If so, then the court should decide whether the success of the claim would impugn the plaintiff's existing criminal conviction.  If so, the Section 1983 claim should be dismissed without prejudice in accordance with *Heck*.  Given the changes on the legal landscape wrought by *Wallace*, the Tenth Circuit now asks this Court to reevaluate its prior decision on Defendants' statute of limitations defense with regard to two of Plaintiffs' claims—violation of due process rights and malicious prosecution under Section 1983.

## DISCUSSION

### I.   DUE PROCESS

After reviewing *Wallace*, the Court concludes that its rationale applies to Plaintiffs' substantive due process claims, and that those claims accrued when Plaintiffs learned of Lawrence Nieto's May 11, 1996 interview in which, subject to alleged coercion, he accused Plaintiffs of committing the Torreon cabin murders.  Although *Wallace* analyzed a claim for unlawful arrest, not substantive due process, the case teaches us more generally that a claim accrues when the plaintiff has a complete and present cause of action, i.e, when the plaintiff could file a lawsuit and obtain relief.  127 S. Ct. at 1095.  Of course, *Wallace* does nothing to change the well established federal discovery rule, which provides that a plaintiff's cause of action accrues when that plaintiff knew or should have known of the fact and cause of his injuries.  *See Smith v. City of Enid, Okla.*, 149 F.3d 1151, 1154 (10th Cir. 1998) (observing that civil rights claims brought under Section 1983 accrue "when the plaintiff knows or should know that his or her constitutional rights have been violated.") (quoting *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994)).  In short, once the cause of action

4

is complete and the plaintiff has either actual or constructive knowledge of it, the statute of limitations begins to run.

In this case, Plaintiffs' due process claim arises from the allegation that Defendants deliberately coerced false statements from Nieto and used them in the criminal prosecution of Plaintiffs. Thus, Plaintiffs had a complete and present cause of action for violation of substantive due process rights at the moment when Defendants used Nieto's allegedly coerced statements in furtherance of the criminal prosecution of Plaintiffs. Of course, their civil rights claims did not actually accrue, and the statute of limitations did not begin to run, until such time as Plaintiffs either knew or reasonably should have known that Defendants were using such statements against them. Defendants contend, and Plaintiffs do not dispute, that Buchner possessed such knowledge on April 14, 1997, while Wilkins knew on June 30, 1999. Although at that time success on their substantive due process claims would have impugned any future criminal convictions the State of New Mexico might have obtained against Plaintiffs, under *Wallace* that fact does not toll the statute of limitations. Plaintiffs filed their complaint on August 8, 2002, more than three years later than both of these dates. Accordingly, their claims are untimely.

Plaintiffs argue that their substantive due process claim did not accrue on those dates because the harm Plaintiffs experienced was not complete. Instead, they contend that after April 14, 1997, and June 30, 1999, Defendants committed continuing violations of Plaintiffs' constitutional rights by "covering up" their coercion of Nieto and hiding exculpatory evidence. According to Plaintiffs, this continuing violation did not end (and their claims did not accrue) until the New Mexico Court of Appeals affirmed the district court's exclusion of the allegedly coerced interviews because until that time, the fabricated evidence could have been used by the State against Plaintiffs in a second criminal trial. In other words, Plaintiffs contend that they experienced ongoing harm, and their

5

claims did not accrue until they had suffered the full extent of their damages.  The Court disagrees

with Plaintiffs' argument because under *Wallace*, the claim is complete when all the elements are

present, regardless of whether a plaintiff has experienced the full extent of his injuries:

> Under the traditional rule of accrual . . . the tort cause of action
> accrues, and the statute of limitations commences to run, when the
> wrongful act or omission results in damages.  The cause of action
> accrues even though the full extent of the injury is not then known or
> predictable.   Were it otherwise, the statute would begin to run only
> after a plaintiff became satisfied that he had been harmed enough,
> placing the supposed statute of repose in the sole hands of the party
> seeking relief.

*Wallace*, 127 S. Ct. at 1097 (internal quotations and citations omitted).  In this case, the Plaintiffs

knew their substantive due process rights had been violated on April 14, 1997 and June 30, 1999,

respectively, when they filed motions asking the state district court to exclude the allegedly coerced

confessions from evidence at trial.  While the Plaintiffs may not have known the full extent of their

injuries at that time—that is, they may not have known about the alleged cover up or that Defendants

allegedly concealed exculpatory evidence—Plaintiffs did know that their constitutional rights had

been violated and that they had incurred some damages.  They failed to file their complaint for

violation of their substantive due process rights within three years of those dates.  Therefore, the

Defendants are entitled to summary judgment on these claims.

## II.    MALICIOUS PROSECUTION

Relying upon *Wallace*, Defendants contend that Plaintiffs' Section 1983 claim for malicious

prosecution accrued when their detention without legal process ended and their detention pursuant

to wrongful institution of legal process began.  127 S. Ct. at 1096.  Therefore, Defendants argue that

the statute of limitations began to run on May 28, 1996 and July 30, 1996 for Buchner and Wilkins

respectively, when magistrate judges bound them over for trial.  Defendants' argument is based upon

a misreading of *Wallace*, which states that one's *damages* for the tort of malicious prosecution begin when one is detained pursuant to the wrongful institution of legal process. *Id*. However, while one's damages may begin at that point, the claim itself does not accrue at that time. As the Supreme Court unambiguously stated in *Wallace*, a Section 1983 civil rights claim cannot accrue until the plaintiff has a complete cause of action. 127 S. Ct. at 1095. In other words, each element of the claim must be present in order for the statute of limitations to begin to run; the commencement of damages—only one element of the claim—is not enough in itself. The Tenth Circuit Court of Appeals has consistently held that the constitutional tort of malicious prosecution requires the plaintiff to demonstrate that the underlying proceeding terminated in his favor. *See, e.g., Pierce v. Gilchrist*, 359 F.3d 1279, 1294 (10th Cir. 2004) ("The second element in the tort of malicious prosecution is that the original action must have been terminated in favor of the plaintiff."); *Robinson v. Maruffi*, 895 F.2d 649, 654-55 (10th Cir. 1990) (holding that Section 1983 claim for malicious prosecution accrues when the criminal proceeding has terminated in plaintiff's favor). Other federal circuit courts have reached the same conclusion. *See, e.g., Brummett v. Camble*, 946 F.2d 1178, 1183-84 (5th Cir. 1991) (collecting cases) ("[T]he federal courts have adopted the common law rule that termination of the underlying criminal proceeding in favor of the accused is an essential element of a 1983 malicious prosecution claim."); *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183-84 (4th Cir. 1996). Indeed, in *Wallace* the Supreme Court expressly recognized that "an element of [malicious prosecution] is the favorable termination of criminal proceedings."[1] 127 S. Ct. at 1097. Furthermore, the elements of the tort have not changed in the

---

[1] However, in *Wallace* the Supreme Court also observed that it had never "explored the contours of a Fourth Amendment malicious prosecution suit under § 1983" and declined to do so in that case. 127 S. Ct. at 1096 n. 2.

7

aftermath of the *Wallace* opinion. *See, e.g., Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007); *Meadows v. Whetsel*, 227 Fed. Appx. 769, 772, 2007 WL 1475279 (10th Cir. May 22, 2007) (continuing to require favorable termination of criminal charges before malicious prosecution claim matures). Furthermore, it has long been the rule in the Tenth Circuit and other circuits that a malicious prosecution claim cannot accrue until the element of favorable termination has been satisfied. *See, e.g., Robinson v. Maruffi*, 895 F.2d 649, 654-55 (10th Cir.1990); *Brummett v. Camble*, 946 F.2d 1178, 1184 (5th Cir. 1991) (collecting cases). If the rule were otherwise, plaintiffs would be forced to file their malicious prosecution claim before they knew they had a complete cause of action, a result that makes little sense. Thus, until a favorable termination occurred, Plaintiffs' claims for malicious prosecution under Section 1983 would have been subject to dismissal under Rule 12(b)(6). Thus, Plaintiffs did not have a complete and present cause of action upon which they could bring suit until the criminal prosecutions against them terminated in their favor. Those dates are January 3, 2001 for Buchner and March 2, 2001 for Wilkins, the dates upon which the prosecutor in their respective cases filed a nolle prosequi indicating they were dropping the charges.[2] Thus, the statute of limitations began to run on those dates, and Plaintiffs' claims for malicious prosecution are timely.

Defendants argue that the element of "favorable termination is not required where there has never been a conviction." Doc. No. 304 at p. 10. Defendants cite no authority directly on point for this proposition, which certainly has no basis in the elements of the tort as described by the Tenth

---

[2] Defendants argue that the filing of a nolle prosequi does not constitute a "favorable termination" for a criminal defendant. This Court addressed that issue at pages 49-50 of its August 16, 2006 Memorandum Opinion and Order. Perceiving nothing in Defendants' argument that would change its opinion on that question, for the reasons expressed in its previous opinion the Court stands by its original conclusion that a nolle prosequi does constitute favorable termination for a defendant.

Circuit.  Instead, Defendants argue that *Heck v. Humphrey* "is not to the contrary." *Id*.  In *Heck*,

512 U.S. 477 (1994), the Supreme Court held that where a Section 1983 plaintiff has been convicted

and is challenging the prosecution leading to that conviction, a malicious prosecution claim (or a

claim analogous to a malicious prosecution claim) does not mature until the conviction has been

invalidated.  *Id*. at 486-87.   To be sure, *Heck* prohibits the entry of a civil judgment that would

conflict with an existing criminal conviction.  However, that is a far cry from *requiring* a conviction

as an element of malicious prosecution under Section 1983.   *Heck* certainly does not go that far.

Defendants contend that in their *Heck* concurrence, Justices Souter, Blackmun, Stevens, and

O'Connor "argued" that the better analogy in *Heck* was to abuse of process, a common law tort that

does not require a favorable termination.  Doc. No. 304 at p. 10.  The concurrence, authored by

Justice Souter, does not contain such an argument.  *Id*. at 496.  Instead, it merely points out the

danger of relying solely upon the common law, exclusive of statutory interpretation, in order to

inform one's analysis of constitutional torts under Section 1983.  *Id*. at 494-95.  Justice Souter

wrote:

> *Neither [malicious prosecution or abuse of process]*, however,
> precisely matches the statutory § 1983 claim for damages for
> unlawful conviction or confinement; and, *depending on the nature of
> the underlying right* alleged to have been violated (consider, for
> example, the right not to be selected for prosecution solely because
> of one's race), the tort of abuse of process *might* provide a better
> analogy to a § 1983 claim for unconstitutional conviction or
> confinement than the malicious-prosecution tort.

*Id*. at 495 n. 2 (emphasis added).  Defendants' brief to this Court contains no explanation why, under

the circumstances of this case, the tort of abuse of process provides a better common law analogy

for Plaintiffs' constitutional claims.   Furthermore, Justice Souter's concurrence in *Heck*

acknowledges that the favorable termination requirement helps to "avoid[] the knotty statute-of-

limitations problem that arises if federal courts dismiss § 1983 suits filed before an inmate pursues federal habeas, and ... it does so without requiring federal courts to stay, and therefore to retain on their dockets, prematurely filed § 1983 suits." *Id*. at 499. Ultimately, the concurring justices agreed with the inclusion of the element of favorable termination, reading the majority opinion to say that "prison inmates seeking § 1983 damages in federal court for unconstitutional conviction *or confinement* must satisfy a requirement analogous to the malicious prosecution tort's favorable termination requirement." *Id*. at 500 (emphasis added). This falls far short of applying the favorable termination element only where there has been a conviction.

In addition, the Tenth Circuit has declined to hold that the element of favorable termination does not apply when there has never been a conviction. To the contrary, in *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 560 (10th cir. 1999), the court found that Beck's claims for malicious prosecution arising from an alleged rape were ripe when the rape charges against him were dismissed—in other words, when he received a pre-conviction favorable termination. Defendants urge this Court to ignore *Beck*, arguing that it was overruled by *Wallace*. The Court agrees that *Wallace* overruled certain portions of *Beck*'s reasoning, such as its conclusion that some of Beck's claims were precluded by *Heck* because success on those claims would imply the invalidity of a *future* conviction. However, *Wallace* did nothing to impugn the Tenth Circuit's conclusion that a plaintiff's malicious prosecution claim accrues when the prosecutor dismisses charges against him, resulting in a termination of criminal proceedings that is favorable to the accused. Indeed, the Tenth Circuit recognized that fact once again in *Meadows v. Whetsel*, 227 Fed. Appx. 769, 772 (10th Cir. May 22, 2007), a post-*Wallace* decision. Although the Court makes explicit reference to *Wallace* and discusses its holding, *see id.*, in *Meadows* the Tenth Circuit also cites *Beck* with approval for the principle that a malicious prosecution claim does not mature until the criminal charges have been

dismissed before a conviction ever takes place. *Id.* (citing *Beck*, 195 F.3d at 560). In other words, this Court has no reason to believe that either the Supreme Court or the Tenth Circuit would apply the element of favorable termination only where the malicious prosecution plaintiff has been previously convicted.

The Court also disagrees with Defendants' contention that the Tenth Circuit's decision in *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) dictates that Plaintiffs' cause of action accrued when they learned that Nieto's allegedly coerced statements were being used against them. Defendants appear to argue that under *Smith*, a claim for malicious prosecution always accrues before the filing of a nolle prosequis. Defendants' argument is misplaced. In *Smith*, the plaintiff asserted unspecified constitutional claims under Section 1983 arising from an alleged conspiracy among state actors to withhold exculpatory evidence in his criminal trial. *Id.* at 1221. In fact, Smith had three trials: the first resulted in a hung jury, while the second resulted in a conviction. *Id.* Smith then filed a successful federal habeas action, in which the Tenth Circuit found that the prosecution had failed to fulfill its obligation to disclose exculpatory evidence. *Id.* The circuit court vacated Smith's conviction and on remand instructed the federal district court to enter an order directing the State of New Mexico to either grant Smith a new trial or, in the alternative, to order his permanent release from custody. *Id.* Consequently, the State of New Mexico granted Smith a new trial and tried him for a third time, resulting in yet another hung jury. *Id.* Shortly thereafter, the New Mexico state prosecutor filed a nolle prosequi in Smith's case. *Id.* Several years later, Smith filed his civil lawsuit. *Id.*

The *Smith* opinion is of little value here because the Tenth Circuit did not consider the questions at the heart of the statute of limitations defense in this case—that is, when did Smith have a complete and present cause of action for malicious prosecution, and at what point did Smith

achieve a favorable termination of the criminal proceedings against him.[3]  Instead, in *Smith* the Court addressed only the question raised by *Heck* (as interpreted by the Tenth Circuit at that time in *Beck*): at what point would success on Smith's unspecified civil constitutional claims no longer demonstrate the invalidity of his existing or future criminal conviction, such that he could pursue those claims under *Heck* and *Beck*?  While that was an interesting question under the unique facts in *Smith*, it is not the question before the Court now.  Under *Wallace*, this Court must first determine when Plaintiffs had a complete and present cause of action for malicious prosecution.  Indeed, this Court need not even reach the issue of applying *Heck* because it has concluded that Plaintiffs' cause of action was incomplete until the filing of the nolle prosequis in their criminal cases.  Because their claims for malicious prosecution did not accrue until that time, there was no possible conflict with *Heck*, and there is no need for analysis of that issue.

Even if the analysis of *Smith* did apply here—a proposition with which the Court does not agree because *Smith* apparently did not involve a claim for malicious prosecution—it would not change the outcome of the statute of limitations analysis under the facts of this case.  The *Smith* court concluded that the statute of limitations on Smith's civil rights claims began to run when it invalidated the final judgment in Smith's state criminal trial by vacating his conviction and remanding his habeas case to the district court.  222 F.3d at 1222.  The court's reasoning was twofold.  First, it pointed out that as of the date that it vacated Smith's conviction, there remained no conviction to be impugned by a successful Section 1983 lawsuit.  *Id*.  Second, the court reasoned that when it ruled that the government had unlawfully withheld exculpatory evidence, it had effectively prevented a repetition of the same constitutional violations that had occurred at Smith's

---

[3] Indeed, it is not clear that Smith even asserted a malicious prosecution claim.

12

second trial, and therefore "a third trial necessarily could not have implicated the constitutional violations as issue in Smith's second trial." *Id*.   Under the facts of this case, the nearest analogy is the date upon which the New Mexico Supreme Court refused to grant certiorari on the State's appeal of the New Mexico Supreme Court's decision affirming the district court's ruling excluding Nieto's allegedly coerced statements.   Those dates are May 25, 2000 for Buchner, and May 2, 2000 for Wilkins, and from that point on, one could argue that the civil rights violations that allegedly occurred at their respective trials (in the form of the improper admission of evidence) could not be repeated at any subsequent trial.   Accordingly, the statute of limitations would begin to run on those dates.   However, even using that logic, Plaintiffs' claims in this case are still timely, as they filed their complaint on August 8, 2002.

In short, the Court concludes that Plaintiffs' constitutional claims for malicious prosecution are timely because they filed their complaint within three years of the filing of the nolle prosequis, at which time they achieved a favorable termination and they had a complete and present cause of action.   In accordance with the foregoing,

**IT IS HEREBY ORDERED** that the Motion by Defendants Fenner and Jacoby for summary judgment as to liability [Doc. No. 164] should be **GRANTED** as to Plaintiffs' claims for violation of their substantive due process rights (Count I) on the grounds that Plaintiffs' claims failed to satisfy the statute of limitations.   This Court's previous ruling on the motion remains unchanged in all other respects.

_____
**UNITED STATES DISTRICT JUDGE**