**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**SHAUN WILKINS and ROY BUCHNER,**

        **Plaintiffs,**

**vs.**                                                                                            **Civ. No.  02-980 JH/RLP**

**DETECTIVE JUAN DeREYES, et al.,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motion to reconsider its ruling excluding at trial evidence of polygraph tests taken of the Plaintiffs [Doc. No. 336]. After reviewing the motion, response and reply, as well as the evidence and authorities cited therein, the Court concludes that the motion should be denied.

**DISCUSSION**

**I.**     **DR. RASKIN'S POLYGRAPH OF BUCHNER**[1]

    **A.**     **Actual Guilt**

Defendants argue that the polygraph that Dr. Raskin took of Buchner on October 18, 1996, is evidence of Buchner's actual guilt of the underlying murders, and that actual guilt is a complete defense to a Section 1983 claim for malicious prosecution. Thus, the Defendants contend that the polygraph evidence is "highly relevant" and therefore should be admitted. Doc. No. 336 at 7-8. The only authority Defendants cite for this proposition is Section 657 of the Restatement (Second) of Torts. Plaintiffs do not answer Defendants' argument that actual guilt is a defense to their claim,

---

[1] Defendants do not challenge the Court's decision to exclude the substantive results of Wilkins' polygraph examination.

and there appears to be very little authority on the subject as it pertains to a claim of malicious prosecution under Section 1983, as opposed to the common law tort claim.

According to Defendants, in *United States v. Scheffer*, 523 U.S. 303 (1998), the Supreme Court made clear that polygraphs were *not* per se inadmissible, and that their admissibility was to be decided strictly under a *Daubert* analysis. Defendants make no pinpoint citations for this assertion, and it is little wonder as Defendants' characterization of *Scheffer* is grossly inaccurate. In reality, *Scheffer*'s holding is extremely narrow, as a majority of the Court was able to agree on only a portion of the principal opinion. In any event, the central holding of *Scheffer* is that a rule excluding polygraph evidence in all military trials "is a rational and proportional means of advancing the legitimate interest in barring unreliable evidence." *Id*. at 312. Thus, the Court in *Scheffer* actually upheld a *per se* ban on polygraph evidence in military courts. The Court also noted, and did not disapprove of, the widespread suspicion of polygraph evidence that exists in the federal courts.[2] *Id*. at 311-12. Nowhere in any of the three opinions did any member of the Court state that *Daubert* alone, and not also Federal Rules of Evidence 702 and 403, governs a determination of whether or not to admit polygraph evidence. Defendants also rely upon *United States v. Walters*, 28 Fed. Appx. 902, 2001 WL 155770 (10th Cir. Dec. 7, 2001) (unpublished), for the proposition that the Tenth Circuit has upheld the admission of polygraph evidence post-*Scheffer*. However, *Walters* is distinguishable because there, the Defendant expressly stipulated to the admission of the polygraph evidence *in that case*. *Id*. at *911. Conversely, Buchner has never stipulated to the admission of his polygraph into evidence, either in the underlying criminal trial or

---

[2] In his concurring opinion, Justice Kennedy did doubt the wisdom of a per se exclusion of polygraph evidence in all courts, in all circumstances. 523 U.S. at 318. Again, however, Justice Kennedy was not speaking for a majority of the Court.

2

in this civil lawsuit. Thus, the *Walters* court conducted its Rule 403 analysis under vastly different circumstances than those presented here.

Throughout their motion to reconsider, Defendants repeat the refrain that the Court should admit the polygraph evidence in this case because, had he so desired, Buchner could have offered his polygraph results into evidence in his underlying criminal trial. This is due to New Mexico Rule of Evidence 11-707, which is singularly welcoming of polygraph evidence. *See Scheffer*, 523 U.S. at 311-12 ("New Mexico is unique in making polygraph evidence generally admissible without the prior stipulation of the parties and without significant restriction."). Thus, suggest Defendants, because of the uniqueness of New Mexico state law, Plaintiffs took the polygraphs at their own risk in the hopes of using them to their benefit in their state court criminal trials. Accordingly, Defendants argue the evidence should be admitted in this civil case in federal district court. In other words, according to Defendants the New Mexico Rules of Evidence alter the analysis under Federal Rule of Evidence 403 when weighing the prejudice to the Plaintiffs flowing from the admission of the evidence. Under Defendants' theory, the outcome would be different if the Plaintiffs had been tried for the murders in a different state. Defendants offer no authority in support of this proposition and cite no case in which a federal court's analysis under either Rule 702 or Rule 403 is altered by the evidence law of the state in which it sits. Although the Federal Rules of Evidence expressly provide for the application of state law in certain circumstances, *see* Fed. R. Evid. 302 (presumptions); *id*. 501 (privileges); *id*. 601 (competency of witnesses), this situation does not fit within any of those exceptions. Further, as this Court's jurisdiction is based upon the existence of a federal question, not upon diversity, the argument for applying the state law carries even less weight.

Finally, Defendants contend that Buchner's polygraph is relevant to determining whether or

3

not Defendants had probable cause to arrest the Plaintiffs for the underlying murders. This argument is puzzling, as Dr. Raskin took Buchner's polygraph months after Defendants arrested Buchner. As a result, even had Defendants known about the polygraph when it was taken in October of 1996, which they did not, the results could not have played a role in their decision to arrest Buchner months earlier. In light of this problem, Defendants suggest that Buchner's polygraph should be admitted because "it confirms the earlier investigative polygraphs of Popeleski, Nieto and Wilkins and is evidence that Defendants got it right as to Plaintiffs' presence at the cabin and probable cause as to the murders." Doc. No. 336 at 13. Defendants cite no authority that provides that evidence obtained eight months after an arrest, and which could not possibly have been known to the arresting officers, is relevant to a determination of whether those officers had probable cause—even if it merely confirms evidence that was in the officers' possession at the time of arrest. As described by the Supreme Court, probable cause "has come to mean more than bare suspicion: Probable cause exists where the facts and circumstances *within their (the officers') knowledge* and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (emphasis added, internal quotations omitted). Furthermore, the officer's belief of guilt must be particularized with respect to the person to be seized. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). To determine whether the Defendants had probable cause to arrest Plaintiffs, one must examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Defendants have failed to demonstrate that a polygraph taken eight months after the arrest is relevant to this determination.

### B. Buchner's Emotional Injury Claim

Defendants argue that "[t]he polygraph examination conducted by Dr. Raskin is powerful evidence that Plaintiff Buchner knows in his heart . . . that he is guilty of the crime charged." Doc. No. 336 at 18. Thus, Defendants contend that a guilty person is less likely to suffer emotional distress from his incarceration than is an innocent person, and therefore Buchner's polygraph test results are relevant to his claim for emotional distress damages. Although couched in a slightly different way as evidence pertinent to emotional distress, it is clear from the statement above that Defendants offer the Buchner polygraph in order to demonstrate his guilt of the murders. The Court addressed this argument in its prior Memorandum Opinion and Order. *See* Doc. No. 293 at 23 n.5. The Defendants do not refute the authorities cited by this Court on the issue, and the Court remains convinced that its original ruling was correct, both for the reasons cited in the prior Memorandum Opinion and Order and for the reasons set forth herein.[3]

## II. ADMISSION OF BOTH POLYGRAPHS AS "OPERATIVE FACTS"

Next, Defendants argue that the fact that Buchner and Wilkins had polygraphs taken as part of their defense in the criminal cases but chose not to offer the results in either that case or this civil litigation are "operative facts" which should be admissible as to Plaintiffs' actual guilt of the crimes for which they were charged.[4] Defendants offer this evidence apart from the results of the polygraph tests. According to Defendants, the jury should be permitted to hear that the polygraphs were taken

---

[3] Alternatively, Defendants argue that the Court should admit statements made by Buchner to Dr. Raskin during interviews conducted before and after the polygraph test. According to Defendants, these are admissible as statements of a party opponent. This is a new issue not raised in Defendants' original motion in limine, Doc. No. 279. Therefore, it is not appropriate fodder for a motion to reconsider. However, Defendants remain free to raise this argument at trial.

[4] This is a new argument not raised in the original motion in limine.

and that Plaintiffs declined to use that evidence in their criminal trials in order to make the inference that Plaintiffs failed their polygraphs. From there, presumably the jury would be permitted to make the further inference that Buchner and Wilkins were guilty of the murders.

In support of their position, Defendants cite two Tenth Circuit cases. In *Anthony v. Baker*, 767 F.2d 657 (10th Cir. 1985), federal and local law enforcement officers investigated a suspicious fire at an inn. All the inn's employees took and passed polygraph examinations, with the exception of the plaintiff, who failed the first test but passed subsequent examinations. *Id*. at 659. After Anthony was acquitted on criminal charges stemming from the fire, he filed a civil lawsuit for malicious abuse of process. One of the issues before the court was whether there had been sufficient evidence at trial from which the jury could conclude that the defendants had conspired to violate Anthony's civil rights. The Tenth Circuit found that there was ample evidence to support such a conclusion, and cataloged the evidence in its opinion. *Id*. at 664-65. Among the evidence the court listed was testimony from a local law enforcement officer stating that defendant Baker (a law enforcement officer) had lied during the investigation, and that among those lies was Baker's false statement that officers from the sheriff's department had conspired to have Anthony pass a polygraph examination. *Id*. at 665. *Anthony* is inapposite for several reasons. First, the question of the admissibility of the operative fact that the plaintiff had taken a polygraph test was not before the Tenth Circuit. Rather, the question was whether the evidence that had been admitted was sufficient to preclude a directed verdict in favor of the defendants. Therefore *Anthony* cannot be interpreted to stand for the proposition that such evidence is admissible. Second, the purpose for which the plaintiff offered the evidence in *Anthony* was vastly different than Defendants' purpose here. In *Anthony*, the plaintiff offered the evidence in order to show that Baker acted with malice by lying about the circumstances of his polygraph test, thereby depriving Baker of qualified

6

immunity. It was not offered as evidence of either the plaintiff's lack of veracity or his actual guilt of the underlying crime. Thus, the fact that a polygraph was taken was not an "operative fact" in *Anthony*.

Defendants also rely upon *Smith v. Cochran*, 182 Fed. Appx. 854, 2006 WL 1755932 (10th Cir. June 28, 2006) (unpublished). In that case, a prison inmate sued a former security guard under § 1983, claiming that he had raped her. In the course of its investigation, the prison demanded that the guard take a polygraph examination. However, he quit his job before the examination took place. *Id*. at *858. At trial, the district court prohibited the plaintiff from arguing during closing argument that the defendant lacked credibility because he resigned to avoid taking the polygraph test. *Id*. at *862. The court reasoned that the jury would be encouraged to draw the improper inference that the defendant raped the plaintiff, resulting in unfair prejudice. The Tenth Circuit upheld this ruling, concluding that the district court did not abuse its discretion. *Id*. at *863. Similarly, this Court has held that the polygraph evidence that Defendants wish to present to the jury would result in unfair prejudice that would outweigh its probative value, resulting in its exclusion under Rule 403. The same is true if the jury is informed that Plaintiffs had taken polygraphs but failed to present them as evidence in their criminal trials—as in *Smith*, the jury would be encouraged to infer that not only did Plaintiffs lie during the test, but also that they had committed the murders. And like *Smith*, this would result in unfair prejudice to Plaintiffs. Neither of the cases cited by Defendants alters this Court's conclusion, which is set forth more fully in its Memorandum Opinion and Order entered August 16, 2006 [Doc. No. 293].

Finally, the "operative fact" that Wilkins took a polygraph test but did not offer it into evidence should be excluded for an additional reason, more fully discussed in the Court's Memorandum Opinion and Order dated August 16, 2006. As the Court stated therein, Wilkins'

7

polygraph examination was inconclusive, preventing the polygraph examiner from reaching any conclusion whatsoever regarding his veracity in answering the questions. Under such circumstances, it would be unfairly prejudicial to allow the jury to infer dishonesty, and therefore guilt, from the examination when in fact the examiner himself was unable to draw any such conclusions.

For all the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendants' motion to reconsider its ruling excluding at trial evidence of polygraph tests taken of the Plaintiffs [Doc. No. 336] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**